1  CARLOS JIMENEZ, Bar No. 227534
   cajimenez@littler.com
2  LITTLER MENDELSON, P.C.
   633 West 5th Street, 63rd Floor
3  Los Angeles, CA  90071
   Telephone:   213.443.4300
4  Facsimile:   213.443.4299

5  LINDA N. BOLLINGER, Bar No. 289515
   lbollinger@littler.com
6  LITTLER MENDELSON, P.C.
   50 W. San Fernando, 7th Floor
7  San Jose, CA  95113.2303
   Telephone:   408.998.4150
8  Fax No.:     408.288.5686

9
   Attorneys for Defendant
10 CIGNA HEALTH AND LIFE INSURANCE
   COMPANY
11

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15 | JONATHAN SANTIAGO, individually,          | Case No.  1:20 at 00766
16 | and on behalf of other members of the
   | general public similarly situated,         | **(Tulare County Superior Court Case No. 284004)**
17 |              Plaintiff,
18 |       v.                                   | **DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT UNDER 28 U.S.C. SECTION 1332(D)(2) (CAFA)**
19 | CIGNA HEALTH & LIFE INSURANCE
   | COMPANY, an unknown business entity;
20 | and DOES 1 through 100, inclusive,         | [28 U.S.C. §§ 1332, 1441, & 1446]
21 |              Defendants.
22                                              | Complaint Filed on August 19, 2020

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

**TO THE CLERK OF THE FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF JONATHAN SANTIAGO, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Cigna Health and Life Insurance Company ("Defendant") hereby removes the above-entitled, Case No. 284004, action from the Superior Court in the State of California for the County of Tulare to the United States District Court for the Eastern District of California. This removal is based on 28 U.S.C. §§ 1332, 1441, and 1446.

## I.  STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.  VENUE

2. This action was filed in the Superior Court of California for the County of Tulare. Venue properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. sections 84(b), 1391, 1441, and 1446.

## III.  PROCEDURAL HISTORY

3. On August 19, 2020, Plaintiff Jonathan Santiago filed an unverified Class Action Complaint ("Complaint") in the Superior Court of California in and for the County of Tulare (Case No. 284004). (Declaration of Carlos Jimenez in Support of Defendant's Notice of Removal ("Jimenez Decl."), at ¶ 2, **Exhibit A**.)

4. Plaintiff's Complaint asserts causes of action for: (1) Violation of Cal. Lab. Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of Cal. Lab. Code §§ 226.7 and 512(a) (Unpaid Meal

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

2.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Period Premiums); (3) Violation of Cal. Lab. Code § 226.7 (Unpaid Rest Periods); (4) Violation of Cal. Lab. Code §§ 1194, 1197, 1197.1 (Unpaid Minimum Wages); (5) Violation of Cal. Lab. Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) Violation of Cal. Lab. Code § 204 (Wages Not Timely Paid During Employment); (7) Violation of Cal. Lab. Code §226(a) (Non-Compliant Wage Statements; (8) Violation of Cal. Lab. Code § 1174(d) (Failure to Keep Requisite Payroll Records); (9) Violation of Cal. Lab. Code §§ 2800 and 2802 (Unreimbursed Business Expenses); (10) Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Jimenez Decl. ¶ 2, **Exh. A**.)

3.  On September 2, 2020, Plaintiff served the Summons and Complaint, and Civil Cover Sheet. (Jimenez Decl. ¶ 3, **Exhibit B**.)

4.  On October 1, 2020, Defendant filed its Answer to Plaintiff's Complaint in the Superior Court of California for the County of Tulare, generally denying Plaintiff's allegations and asserting various defenses. (Jimenez Decl. ¶ 4, **Exhibit C**.)

5.  Defendant has not been served with any other process, pleadings, and/or orders. Exhibits A-C thereby satisfy the requirements of 28 U.S.C. § 1446(a). To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Superior Court of the State of California, County of Tulare, or served by any party. (Jimenez Decl. ¶ 5.) To Defendant's knowledge, no proceedings related hereto have been heard in the Superior Court of the State of California, County of Tulare. (Jimenez Decl. ¶ 5.)

**IV.   TIMELINESS OF REMOVAL**

6.  An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendant within 30 days of service on defendant of the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Removal of this action is timely because this Notice of Removal has been filed within 30 days from September 2, 2020, when Defendant was served with the Complaint. 28 U.S.C. § 1446(b).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

3.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

## V.  NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

7. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Eastern District of California, the undersigned is providing written notice of such filing to Plaintiff's counsel of record: Edwin Aiwazian, Lawyers for Justice, PC, 410 West Arden Avenue, Suite 203, Glendale, California, 91203. In addition, a copy of Defendant's Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Tulare. (Jimenez Decl. ¶ 6.)

## VI.  CAFA JURISDICTION

8. CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

### A.  **Plaintiff Filed A Class Action Under State Law**

9. Plaintiff filed his action as a class action based on alleged violations of California state law. (Jimenez Decl. ¶ 2, Exh. A, Complaint ¶¶ 16, 25, 37-47, and Prayer for Relief.)

### B.  **The Proposed Class Contains At Least 100 Members**

10. 28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."

11. Plaintiff filed this action on behalf of the class consisting of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California" and subclass consisting of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

at any time during the period from four years preceding the filing of this Complaint to final judgment who earned shift differential pay which was not used to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages and who reside in California. ("Subclass A")." (Jimenez Decl. ¶ 2, Exh. A, Complaint ¶ 13.)

12. Based on a review of Cigna's data and records, Cigna has employed at least 1,319 non-exempt employees working in its California locations between August 19, 2016 and August 2020. (Declaration of Jason Chambers in Support of Defendant's Notice of Removal ("Chambers Decl.") at ¶ 5.)) Therefore, Defendant's internal records demonstrate that there are well over 100 putative class members in this case.

### C. Defendant Is Not A Governmental Entity

13. Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

14. Defendant is a company, not a state, state official, or other government entity exempt from CAFA.

### D. There Is Diversity Between At Least One Class Member And One Defendant

15. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

16. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place he

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

5.
DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

resides with the intention to remain). Furthermore, allegations of residency in a state court complaint create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (finding a place of residence provides "'prima facie' case of domicile").

17. Plaintiff alleges that he is an individual residing in the State of California, County of Tulare. (Jimenez Dec. ¶ 2, Exh. A, Complaint ¶ 5.) Plaintiff then filed the present action in Tulare County. Defendant is informed and believes that Plaintiff, at the time this action was commenced, was and is a citizen and resident of the State of California. *See Albrecht v. Lund*, 845 F.2d 193, 194-95 (9th Cir. 1988) (finding citizenship requirement satisfied where plaintiff's complaint contained allegations consistent with diversity and plaintiff failed to contest the petition for removal); see also *Anderson v. Watts*, 138 U.S. 694, 706 ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary").

18. Defendant is not a citizen of the State of California. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

19. Defendant is a corporation organized and existing under the laws of Connecticut and its principal place of business is located in Bloomfield, Connecticut where it operates its business. (Chambers Decl., ¶ 3.)

20. The majority of Defendant's corporate officers work from its headquarters at 900 Cottage Grove Road, Bloomfield, CT 06152, and 1601 Chestnut St., Two Liberty, Philadelphia, PA 19192. Accordingly, Connecticut and Pennsylvania are primarily where Defendant's corporate officers direct, control, and coordinate Defendant's activities and make operational, executive, administrative and policy-making decisions. (Chambers Decl., ¶ 4.)

21. The Supreme Court has explained that a corporation's principal place of business is

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

6.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

determined under the "nerve center" test. *See Hertz Corp. v. Friend*, 599 U.S. 77, 80-81 (2010). Under the "nerve center" test, the principal place of business is the state where "a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* The Supreme Court further explained in *Hertz* that a corporation's nerve center "should normally be the place where the corporation maintains its headquarters" and that a corporation's nerve center is a "single place." *Id.* at 93.

22. Accordingly, for purposes of removal, Defendant is a citizen of the State of Connecticut and Pennsylvania. Defendant is not a citizen of California and diversity of citizenship exists as between Defendant and Plaintiff because Plaintiff is a citizen of the State of California.

23. Doe defendants in this case have no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded").

### E. The Amount In Controversy Exceeds $5,000,000[1]

24. "Under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Where, as here, the Complaint is silent as to the amount in controversy, a preponderance of the evidence standard applies. *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010), *citing Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

25. Although Defendant expressly denies any liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied the Court must presume that Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability"). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [defendant's] liability." *Lewis*, *supra,* 627

---

[1] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

7.
DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

F.3d at 400 (9th Cir. 2010). Stated differently, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what defendants might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Investments, Inc.* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

26. CAFA authorizes the removal of class actions in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5 million. *See* 28 U.S.C. § 1332(d). Here, the Complaint places more than $5 million in controversy.

27. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a). The United States Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in section 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* Otherwise, "the defendant's amount in controversy allegation should be accepted" just as plaintiff's amount in controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553. "[N]o antiremoval presumption attends cases invoking CAFA." *Id*. at 554.

28. Here, Plaintiff does not allege the amount in controversy. When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so, and the notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Company LLC*, 135 S. Ct. at 554.

29. While Defendant denies Plaintiff's claims of wrongdoing and denies his request for relief therein, as specifically outlined below, the factual allegations in Plaintiff's Complaint and the total amount of damages, penalties, attorneys' fees, and other monetary relief at issue in this action

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

8.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

1   clearly demonstrate that the total amount in dispute is far in excess of this Court's jurisdictional
2   minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (facts presented in notice of
3   removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits
4   satisfied). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy
5   its burden of proof [as to CAFA's amount-in controversy requirement], the chain of reasoning and its
6   underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201
7   (9th Cir. 2015).

8       30.    Plaintiff seeks to recover damages, penalties, and attorney's fees for alleged failure to provide meal and rest breaks, failure to pay overtime wages, inaccurate wage statements, failure to reimburse business-related expenses, failure to pay all wages upon separation, and violation of California's Unfair Competition Law. (Jimenez Decl. ¶ 2, Exh. A, Complaint, Prayer for Relief.)

12       31.    Specifically, Plaintiff's Complaint alleges that Defendant "engaged in a pattern and practice of wage abuse against their hour-paid or non-exempt employees…[t]his pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks…" (Jimenez Decl. ¶ 2, Exh. A, Complaint, ¶ 25.)

16       32.    Plaintiff's complaint further alleges the Defendant "failed to use shift differential pay to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages..." (Jimenez Decl. ¶ 2, Exh. A, Complaint, ¶ 27.)

19       33.    With regard to meal and rest periods, Plaintiff alleges, "Defendants failed to provide Plaintiff and other class members all required rest and meal periods during the relevant time period…" (Jimenez Decl. ¶ 2, Exh. A, Complaint, ¶ 28.) Further, Plaintiff alleges that Plaintiff and the putative class members did not receive an additional one hour of pay when a meal or rest period was missed. *Id.* at ¶¶ 29 and 30.

24       34.    Plaintiff alleges Defendant "failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs." (Jimenez Decl. ¶ 2, Exh. A, Complaint, ¶ 46.)

26       35.    Plaintiff also seeks derivative claims to recover penalties for inaccurate wage statements, failure to timely pay wages, and failure to pay wages at termination. (Jimenez Decl. ¶ 2,

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

9.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Exh. A, Complaint ¶¶ 32-35, and the Prayer for Relief.)

36. Throughout the Complaint, Plaintiff alleges Defendant uniformly adopted and maintained a "pattern and practice" of alleged labor code violations. (*See e.g.*, Jimenez Decl. ¶ 2, Exh. A, Complaint, ¶¶ 25, 116, and 118.) As such, a 100% violation rate may be considered reasonable based on Plaintiff's allegation. *See e.g., Mejia v. DHL Express (USA), Inc.,* 2015 U.S. Dist. LEXIS 67212, *10-11 (C.D. Cal. May 21, 2015) (100% violation rate may be based on allegations of uniformly adopted and maintained policies).

37. Plaintiff also includes a cause of action for violation of the Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.* (Jimenez Decl. ¶ 2, Exh. A, Complaint ¶¶ 113-119.) Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class' minimum wage and overtime claims from three to four years from the filing of the Complaint, which in this case, extends the statute of limitations back to July 21, 2016. *See* CAL. BUS. & PROF. CODE § 17208; *Cortez v. Purolater Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

38. While Defendant denies Plaintiff's claims of wrongdoing and denies his request for relief therein, as specifically outlined below, the factual allegations in Plaintiff's Complaint and the total amount of damages, penalties, attorneys' fees, and other monetary relief at issue in this action clearly demonstrate that the total amount in dispute is far in excess of this Court's jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

39. For purposes of removal, Defendant must assume (without conceding) the truth of Plaintiff's allegations for purposes of assessing amount in controversy. Based on a preliminary review of its records, Defendant has employed approximately 1,319 non-exempt employees in California

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

10.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

between August 19, 2016 and August 2020 with an average hourly rate of $21.67 per hour. (Chambers Decl. ¶ 5.) Additionally, since August 19, 2017, a total of approximately 1,243 non-exempt hourly employees worked for Defendant. (Chambers Decl. ¶ 6.)

### 1. Amount In Controversy—Plaintiff's First Cause of Action for Overtime.

40. In his First Cause of Action, Plaintiff alleges he and the Class "worked in excess of eight (8) hours a day in a day, and/or in excess forty (40) hours in a week." (Jimenez. Decl. ¶ 2, Exh. A, Complaint ¶ 54.) Plaintiff further alleges "Defendant intentionally and willfully failed to pay overtime wages owed…" (Jimenez. Decl. ¶ 2, Exh. A, Complaint ¶ 55.) As such, Plaintiff seeks compensation for Defendant's alleged failure to fully compensate overtime hours.

41. California Labor Code § 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, non-exempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek. Cal. Lab. Code § 510(a). The statutory period for recovery under California Labor Code section 510 is calculated under a four-year statute of limitations. *See* Cal. Lab. Code § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

42. During the relevant time period between August 19, 2016 and August 2020, 1,319 employees worked approximately 191,031 workweeks during the statutory period between August 19, 2016 and August 2020 based on their hire and termination dates. (Chambers Decl. ¶ 5.) The average hourly rate for non-exempt employees during the class period is $21.67. (*Id.*)

43. Using a conservative estimate of 15 minutes of unpaid overtime per workweek, the amount in controversy for the unpaid overtime wages claim totals **$1,552,365.66** (191,031 workweeks x .25 hour per workweek x $21.67 x 1.5 overtime rate). *See Jasso v. Money Mart Express, Inc.*, No. 11–CV–5500 YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (one hour of overtime per

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

11.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

workweek was reasonable given Plaintiff's allegations of a "uniform policy and scheme" and that putative class members worked over 8 hours per day and/or 40 hours in a week); *Jimenez v. Allstate Ins. Co.*, No. CV 10–8486 AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (estimate of one hour of unpaid overtime per workweek was reasonable based on allegation of "consistent" overtime work).

### 2. Amount In Controversy –Plaintiff's Second Cause of Action for Meal Period Premiums.

44. In the Second Cause of Action, Plaintiff seeks damages for alleged missed meal periods. (Jimenez Decl. ¶ 2, Exh. A, Complaint ¶¶ 58-68.) Specifically, Plaintiff alleges that Defendant "intentionally and willfully required Plaintiff and other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium…" (Jimenez Decl. ¶ 2, Exh. A, Complaint, ¶ 65.)

45. An employee denied a meal period may be entitled to a premium in the amount of an additional hour's wages. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

46. While Defendant denies the validity and merit of Plaintiff's missed meal period claim, for purposes of removal only, based on a preliminary review of their records, the putative class of 1,319 employees worked 191,031 workweeks during the statutory period between August 19, 2016 and August 2020 based on their hire and termination dates. (Chambers Decl. ¶ 5.) The average hourly rate for non-exempt employees during the class period is $21.67. (*Id.*)

47. Using a conservative estimate of one-quarter (1/4) missed meal periods per workweek, which Plaintiff alleged occurred, and applying the average hourly rate across the class, the amount in controversy for the missed meal period claim totals **$1,034,910.44** (191,031 workweeks x .25 missed meal period per workweek x $21.67).

### 3. Amount In Controversy—Plaintiff's Third Cause of Action for Rest Break Premiums.

48. In the Third Cause of Action, Plaintiff alleges that Defendant "required Plaintiff and other class members to work four (4) hours or more without authorizing or permitting ten (10) minute

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

12.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

rest period per each four (4) hour period worked." (Jimenez Decl. ¶ 2, Exh. A, Complaint ¶ 73.) Plaintiff further alleges that Defendant "failed to pay Plaintiff and the other class members the full rest period premium due…" (*Id.* at ¶ 75.)

49. An employee denied a rest break may be entitled to a premium in the amount of an additional hour's wages. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

50. While Defendant denies the validity and merit of Plaintiff's missed rest break claim, for purposes of removal only, based on a preliminary review of their records, the putative class of 1,319 employees worked 191,031 workweeks during the statutory period between August 19, 2016 and August 2020 based on their hire and termination dates. (Chambers Decl. ¶ 5.)  The average hourly rate for non-exempt employees during the class period is $21.67.  (*Id.*)

51. Using a conservative estimate of one-quarter missed rest breaks per workweek, and applying the average hourly rate across the class, the amount in controversy for the missed rest break claim totals **$1,034,910.44** (191,031 workweeks x .25 missed rest period per workweek x $21.67).

### 4. Amount In Controversy—Plaintiff's Fifth Cause of Action for Waiting Time Penalties.

52. In his Fifth Cause of Action, Plaintiff seeks waiting time penalties pursuant to Cal. Lab. Code § 203. (Jimenez Decl.¶ 2, Exh. A, Complaint, ¶¶ 84-89.) The statute of limitations for Plaintiff's Cal. Lab. Code § 203 waiting time penalty claim is three years. *Pineda v. Bank of America*, N.A., 50 Cal. 4th 1382, 1935 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

53. Plaintiff demands up to thirty (30) days of pay as penalty for not paying all wages due at time of termination for the putative class. (Jimenez Decl.¶ 2, Exh. A, Complaint, ¶ 89.)

54. Defendant denies the validity and merit of Plaintiff's waiting time penalties claim. For purposes of removal, based on a preliminary review of their records, Defendant estimates that 342 employees have separated from employment since August 19, 2017. The average hourly rate for all

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

13.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

non-exempt employees during this three-year period is $21.93. (Chambers Decl. ¶ 8.)

55. Although Defendant denies Plaintiff's allegations, including any alleged damages, based on the reasonable assumption that the putative class members would receive waiting time penalties for thirty days, an estimate of the amount in controversy related solely to waiting time penalties is **$1,800,014.40** (8 hours a day x 30 days x $21.93 x 342 employees).

### 5. Amount In Controversy—Plaintiff's Seventh Cause of Action for Inaccurate Wage Statements.

56. In his Seventh Cause of Action, Plaintiff alleges that Defendant "intentionally and willfully failed to provide Plaintiff and other class members with complete and accurate wage statements." (Jimenez Decl. ¶ 2, Exh. A, Complaint ¶ 98.) Plaintiff seeks all available statutory penalties, damages, attorneys' fees, and costs of suit. (Jimenez Decl. ¶ 2, Exh. A, Complaint, ¶¶ 101-102 and Prayer for Relief.)

57. Cal. Lab. Code § 226(e) provides for a statutory penalty for violations of Cal. Lab. Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Lab. Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. C.C.P. § 340.

58. For purposes of removal, based on a preliminary review of its records, at least 1,015 non-exempt employees worked approximately 26,025 pay periods in California from the period between August 19, 2019 to August 2020 based on employees hire and termination dates, and based on a bi-weekly pay frequency. (Chambers Decl. ¶ 7.) None of these employees exceeded the $4,000 cap per employee.

59. Defendant denies the validity and merit of Plaintiff's wage statement claim. However, the amount in controversy for Plaintiff's wage statement claim is **$2,551,750.00** ((1,015 non-exempt employees x $50 per initial pay period) + (25,010 remaining pay periods x $100 per subsequent pay period), with a $4,000 cap per employee).

### 6. Amount In Controversy—Plaintiff's Claim for Attorneys' Fees.

60. Plaintiff seeks attorneys' fees and costs in his Complaint. (Jimenez Decl. ¶ 2, Exh. A,

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

14.
DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Complaint, Prayer for Relief.) It is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See*, *e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 549 U.S. 822 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

61. In California, it is not uncommon for an attorneys' fee award to be 25 to 33 percent of a settlement or judgment. *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties, and waiting time penalties); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216-1218 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

62. The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

63. Based on Plaintiff's allegations, a conservative estimate of the amount in controversy for his claims totals **$7,973,950.94**.[2] This subtotal exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25 percent further increases the amount in controversy by **$1,993,487.74** for a total amount in controversy

---

[2] $1,552,365.66 (overtime claim) + $1,034,910.44 (meal period claim) + $1,034,910.44 (rest period claim) + $1,800,014.40 (waiting time penalties claim) + $2,551,750.00 (wage statement claim)

of **$9,967,438.68**.

64. Finally, Plaintiff also seeks damages for minimum wage violations, reimbursement of business expenses, and injunctive relief from Defendant based on his wage and hour allegations. (Jimenez Decl. ¶ 2, Exh. A, Complaint ¶¶ 78-83; 108-112; and 113-119.)

65. While Defendant has not yet quantified the alleged minimum wage damages, reimbursement of business expenses, and costs of compliance with any such injunction, this would further increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), *cert granted in part*, 534 U.S. 1126 (2002); *cert. dismissed*, 537 U.S. 1 (2002); *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes).

**VII.   SUMMARY**

66. Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid minimum wage and overtime wages, unpaid meal and rest periods premiums, non-compliant wage statements, waiting time penalties, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. *See* 28 U.S.C. § 1332(d)(2):

| Plaintiff's Alleged Class Claim | Amount in Controversy for the Alleged Putative Class Members |
|---|---|
| Unpaid Overtime | $1,552,365.66 |
| Meal Period Premiums | $1,034,910.44 |
| Rest Break Premiums | $1,034,910.44 |
| Waiting Time Penalties | $1,800,014.40 |
| Inaccurate Wage Statements | $2,551,750.00 |
| Attorneys' Fees | $1,993,487.74 |
| **Amount in Controversy** | **$9,967,438.68** (exclusive of alleged damages arising from Plaintiff's claims for unpaid minimum wages and unreimbursed business expenses) |

67. Indeed, were damages exposure extended through trial, the totals would be even higher.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

16.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

*Mejia v. DHL Express* (USA), Inc., 2015 U.S. Dist. LEXIS 67212, *6, 2015 WL 2452755 (C.D. Cal. May 21, 2015) (where the Complaint does not cut off class allegations as of the date the complaint was filed, including post-filing time in removal computations is consistent with the allegations in the complaint and permissible).

68. Accordingly, although Defendant denies Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 threshold required.

69. WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of Tulare, to the United States District Court for the Eastern District of California.

Dated: October 2, 2020

By: /s/ *Carlos Jimenez*
CARLOS JIMENEZ
LINDA BOLLINGER
LITTLER MENDELSON, P.C.
Attorneys for Defendant
CIGNA HEALTH AND LIFE
INSURANCE COMPANY

4841-9626-9260.2

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

17.

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT